UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RERNARD GREENLAW, TAMAYA GREENLAW, and TEVIN GREENLAW, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) 09 C 5499<br>) |
| THE CITY OF CHICAGO, JODY WEIS, PATRICK FAHEY, CRAIG BROWNFIELD, and SHANE JONES, | ) Judge George M. Marovich<br>)<br>)<br>) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Rernard Greenlaw ("Greenlaw") on his own behalf and on behalf of his two minor children, Tanaya Greenlaw ("Tanaya") and Tevin Greenlaw ("Tevin"), filed a complaint against defendants the City of Chicago, Police Superintendent Jody Weis and Police Officers Patrick Fahey ("Fahey"), Craig Brownfield ("Brownfield") and Shane Jones ("Jones") for claims arising out of an incident on June 22, 2008. Defendants City of Chicago, Fahey, Brownfield and Jones move for summary judgment on plaintiff's claims.[1] For reasons set forth below, the Court grants the motion for summary judgment.

**I.     Background**

Unless otherwise noted, the following facts are undisputed.[2]

---

[1] Plaintiff previously dismissed voluntarily defendant Jody Weis.

[2] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by

On the evening of June 22, 2008, defendant officers Brownfield, Fahey and Jones were in the vicinity of 2337 E. 85th Street (where plaintiff Greenlaw lived) in Chicago, because they were responding to a gunshot.

In an alley near 2337 E. 85th, defendants encountered Shapell Terrell ("Terrell"), who held a handgun in his right hand. (Terrell was Greenlaw's cousin.) Terrell fled from the police officers and refused orders to stop and drop his gun. When Terrell turned and pointed his gun at Brownfield, Fahey and Jones, they discharged their service weapons at Terrell. Terrell fell to the floor in the vestibule of the 2337 E. 85th Street building.

As the gunshots rang out, plaintiff Greenlaw was upstairs in his apartment. Greenlaw heard the shots and, because he was concerned about the safety of his children, ran down the stairs. Within ten seconds after defendants fired their shots, Greenlaw had reached the vestibule. After the shots were fired, according to Greenlaw, there were "lots of people outside screaming and yelling."

When he reached the vestibule, Greenlaw pushed on the door, but the door was blocked by Terrell's body. Greenlaw pushed the door further (and with the door, the body) in order to enter the vestibule. On the ground in the vestibule, Greenlaw saw his cousin's unmoving body and two revolvers. Greenlaw also saw the three defendants (who had, seconds before,

---

the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). It is not enough at the summary judgment stage for either party to *say* a fact is disputed. The Court considers a fact disputed *only* if both parties put forth admissible evidence of his or its version of the fact. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

The Court notes, too, that it sustains defendants' objection to plaintiff's declaration, because it was unsigned. *28 U.S.C. § 1746*.

discharged their weapons) pointing their guns toward the vestibule.  Outside, the officers observed Greenlaw looking toward the guns on the floor and then looking toward the officers.

What happened next is disputed.  According to Greenlaw, the officers ordered him to drop to the floor, and he complied.  Then, an officer (who Greenlaw cannot identify), grabbed him by the belt and neck and carried him outside.  Once he was outside, another officer pushed Greenlaw to the ground and, at some point, put a knee in his back.  According to defendants, Greenlaw refused their order to leave the vestibule, so Officer Fahey entered the vestibule and removed Greenlaw.  Once outside, Officer Fahey handed Greenlaw to Officer Jones, who ordered Greenlaw to get on the ground.  Greenlaw complied.

The parties agree that Greenlaw did not have a weapon and did not attempt to flee.  They also agree that once Greenlaw was on the ground, he was restrained with plastic straps on his wrists.

A moment later, members of the Chicago Police Department's Targeted Response Unit arrived.  Officer Jones turned Greenlaw over to the Targeted Response unit.  That was the end of Brownfield's, Fahey's and Jones's interaction with Greenlaw.

It was not, however, the end of Greenlaw's interaction with the Chicago Police Department.  Greenlaw was hoisted up and walked to a nearby police car.  Once Greenlaw was in the police car, he saw his children standing in a crowd.  The officer who put Greenlaw in the police car pointed his gun at the crowd and told them to get back.  Greenlaw sat in the back of the police car for approximately one hour.

After an hour in the back of a police car, Greenlaw was driven to Area 2 Headquarters.  There, he was handcuffed to a wall.  At some point while he was detained, Greenlaw was moved down the hall while shackled in handcuffs.  Greenlaw was kept at Area 2 Headquarters until he answered questions posed to him by the Independent Police Review Authority about the

defendants' shooting of Terrell. After Greenlaw answered the questions, two detectives drove him home.

Plaintiffs filed suit asserting wrongful arrest, false imprisonment and false accusation.

## II.     Summary judgment standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III.    Discussion

### A.      Defendants' motion for summary judgment as to the minor plaintiffs

Defendants move for summary judgment with respect to the claims made by minor plaintiffs Tanaya and Tevin. It is not clear what Tanaya's and Tevin's claims are, but the claims arise from an officer's pointing a gun at a crowd, in which they were standing. It is undisputed that the officer who pointed the gun is not one of the defendants in this case.

Defendants argued that they could not be liable for such an alleged constitutional deprivation, because they were not involved. An individual can be liable under § 1983 only if he

caused or participated in the constitutional deprivation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Plaintiffs concede the point.

Accordingly, defendants are granted summary judgment on Tanaya's and Tevin's claims.

**B. Defendant City of Chicago's motion for summary judgment**

Plaintiff Greenlaw named the City of Chicago as a defendant to his § 1983 claim. As the City pointed out in its brief, in order to establish a claim under § 1983 against a governmental entity, one must put forth evidence that the constitutional violation resulted from a policy or custom of the governmental entity. *Monell v. Department of Social Services of New York*, 436 U.S. 658, 690-691 (1978). Greenlaw has put forth no evidence to support this claim and did not address this argument in his response brief.

Accordingly, the City of Chicago is granted summary judgment on Greenlaw's claims against it.

**C. Defendant officers' motion for summary judgment on Greenlaw's claims**

In his complaint, Greenlaw asserted claims for false arrest, false imprisonment and false accusation. In his response brief, Greenlaw concedes that his false accusation claim fails. Accordingly, defendants are granted summary judgment on that claim.

Defendants Fahey, Brownfield, and Jones argue that they are not liable, as a matter of law, because they did not arrest Greenlaw. They argue that their stop of Greenlaw was a reasonable *Terry* stop and that they were not involved in any subsequent arrest of Greenlaw.

The Fourth Amendment to the Constitution prohibits unreasonable searches and seizures. "Two categories of seizure implicate the Fourth Amendment: an investigative stop and an arrest." *United States v. Mancillas*, 183 F.3d 682, 695 (7th Cir. 1999). An investigative (also

known as a *Terry* stop) stop is brief and allows a police officer "to verify suspicions that the person has been, is or is about to engage in criminal activity." *Mancillas*, 183 F.3d at 695 (quoting *United States v. Griffin*, 150 F.3d 778, 783 (7th Cir. 1998)). An investigatory stop does not require probable cause; rather, the stop "must be based on a reasonable suspicion that the stopped individual has or is about to commit a crime." *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011) (quoting *United States v. Booker*, 579 F.3d 835, 838 (7th Cir. 2009). The investigatory stop must still be reasonable, and its reasonableness is determined by considering "whether the degree of intrusion was reasonably related to the known facts." *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994). Courts recognize that "police officers must make a quick decision about how to protect themselves and others from possible danger." *Tilmon*, 19 F.3d at 1225. Courts "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Tilmon*, 19 F.3d at 1225.

The line between an investigatory stop and an arrest is fine. The Seventh Circuit has stated that "using handcuffs, placing suspects in police cars, drawing weapons, and other measures of force more traditionally associated with arrests may be proper during investigatory detention, depending on the circumstances." *Bullock*, 632 F.3d at 1016. "The mere use of force in making a stop does not necessarily transform a stop into an arrest if the surrounding circumstances give rise to a justifiable fear for personal safety." *Tilmon*, 19 F.3d at 1226.

In this case, the Court agrees with defendants that their interaction with Greenlaw was a reasonable investigatory stop. Officers Jones, Brownfield and Fahey are able to point to specific facts that give rise to a reasonable suspicion of criminal activity. The three were investigating a

-6-

gunshot when they encountered Terrell, who ran from them and ultimately pointed a gun at them. The three defendants discharged their service weapons at Terrell. Within ten seconds, plaintiff Greenlaw appeared and pushed his way into the vestibule where Terrell's body was. Greenlaw glanced at the two revolvers on the floor next to Terrell and glanced at the officers, who still had their weapons pointed toward Terrell. It was reasonable for the officers to be concerned that Greenlaw would pick up one of the weapons and use it. Greenlaw, afterall, had not turned around and left when he reached the vestibule that contained the body and two firearms. Rather, he pushed the door into the body in order to enter the vestibule. From the officers' perspective, just ten seconds after they discharged their weapons at someone who had pointed a gun at them, they saw Greenlaw push his way into the vestibule (despite an obstruction) and look toward the weapon and the officers. It was reasonable for the officers to want Greenlaw away from the vestibule and the revolvers for officer safety.

Furthermore, the degree of intrusion was reasonably related to the known facts. Whether one believes Greenlaw (that he followed an order to drop to his knees and then was pulled by the belt and neck outside and pushed down) or the officers (that Greenlaw refused an order to leave the vestibule, was pulled out by the arm and followed an order to get down), both versions of the facts are reasonable given the circumstances. The safety of the officers required that they remove Greenlaw from the vestibule that contained the two revolvers. Given that there were "lots of people screaming and yelling outside," it was reasonable to restrain Greenlaw momentarily once he was outside the vestibule, away from the revolvers.

The Court also has little trouble concluding that what started as a *Terry* stop ultimately evolved into an arrest. It is undisputed that members of the Chicago Police Department Targeted

-7-

Response Unit arrived and took Greenlaw from Officer Jones. The members are not identified in the record, but one member hoisted Greenlaw from the ground and placed him in the back of a police car where he remained for an hour. A member (it is unclear whether it was the same member) drove Greenlaw to Area 2 Headquarters, where Greenlaw was at various points handcuffed to a wall and walked down the hallway in handcuffs. Greenlaw was not released from Area 2 Headquarters until he answered questions asked by the Independent Police Review Board. From these facts, it is clear that by the time Greenlaw was taken to Area 2 Headquarters, where he was handcuffed to a wall, he was not free to leave and had, as a matter of law, been arrested. It is not clear from the record whether probable cause existed for this arrest.

Defendants argue that they cannot be liable for any constitutional violation that occurred after their involvement with Greenlaw ended (i.e., in the back of the police car or at Area 2 Headquarters), because they did not cause or participate in such violation(s). *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). This issue is easy with respect to defendant Brownfield. Brownfield's only involvement with Greenlaw was that he was one of three officers who pointed a gun at Greenlaw at the beginning of what the Court has already concluded was a reasonable *Terry* stop. There is no evidence that Brownfield was involved with putting Greenlaw in the back of a police car or in holding him at Area 2 Headquarters. Similarly, there is no evidence that defendant Fahey was involved with any later violations. Officer Fahey pulled Greenlaw out of the vestibule as part of a reasonable investigatory stop in order to protect officer safety. Once he had Greenlaw out of the vestibule, he handed him off to Officer Jones.

It is Officer Jones's involvement that is the closest call. Greenlaw argues that Jones was involved with his unlawful arrest, because Jones should have released Greenlaw as soon as

Greenlaw was out of the vestibule. The Court has already concluded that restraining Greenlaw momentarily after he left the vestibule was important to officer safety, given that the two revolvers were still in the vestibule and that many people were in the area yelling and screaming. The undisputed evidence is that once the members of the Targeted Response Unit took Greenlaw from Jones, Jones had no further interaction with Greenlaw. Jones was not the officer who put Greenlaw in the back of the car or the officer who kept Greenlaw in a police car for an hour. Jones was at the end of a reasonable investigatory stop when Greenlaw was taken out of his hands. It would be unfair to hold Jones liable merely because after his lawful investigatory stop ended, someone else arrested Greenlaw. Jones had no control over what happened to Greenlaw after Greenlaw was out of his hands. The appropriate remedy is to hold accountable the individuals who held Greenlaw in the back of a police car for an hour and later at Area 2 Headquarters. Those individuals, however, are not defendants in this suit.

The defendants in this case are not liable, because they were not involved in Greenlaw's subsequent arrest. Accordingly, the Court grants defendants summary judgment on Greenlaw's claims against them.

**IV.    Conclusion**

For the reasons set forth above, the Court grants defendants' motion for summary judgment.  Summary judgment is granted in favor of all defendants and against all plaintiffs on all of their respective claims.

ENTER:

_____
George M. Marovich
United States District Judge

DATED: August 2, 2011